The first case on today's docket is Schmechel v. CBAR, who at all? We have Mr. Joshua Bradley for the appellant and Mr. Paul Lynch for the appellee, along with Mr. William Hardy. And you gentlemen have already divided your time equally ten times. And you may proceed when you're prepared to, Mr. Bradley. Thank you, Your Honor. May it please the Court and the Counsel. My name is Joshua Bradley. I represent the name of Cindy Schmechel. I got it right. You got it right, Your Honor. It's a difficult name to say. This case arises out of actually two orders which were entered in the court of Jefferson County by Judge Harrison. Those entered on January 5th and April 13th. Post-judgment orders were filed. And to give you a little bit of background on what happened in those cases, a motion for summary judgment was entered first as related to and advanced investigative and inspection services, which was then kept going until the motion for dismissal was finally ruled upon by the Court. So as to finalize all of those issues into one final order, which would then be appealable at that time, so as to avoid any confusion of this Court. This case arises out of those orders, then, based upon two sets of principles. Number one, that the motion for summary judgment, which was entered by a judge of the Second Judicial Circuit, Judge Harrison, should be overturned. The candidate should be remanded for further critique. The second issue presented was that in the subsequent order, the judge dismissed the remaining parts of the complaint related to CBRA, which should also be reinstated and remanded to the Court for further review. This case arises out of a transaction for the sale of a home. It is important to note that there are two real issues in the present case, and both of them are intertwined. But first, I would talk about the motion for summary judgment, and second, talk about the motion for dismissal of the remaining parts of the complaint against the remaining defendants. Those not being Roger Bullock, doing business as an advanced investigator. You have to speak up a little bit. I apologize. I've got a cold. When it comes down to this, there are a couple of factors which the Court has to remember. Number one, that in dealing with motions for summary judgment, or two 615 motions, which was the only motion filed in the present case, the Court must view all of the well-planned allegations in the light most favorable to the moving party in that case. Or the non-moving party, I apologize, that being myself and my clients. And in both cases, it appears that the Court erred in juxtaposing what he felt were his own issues and his own interpretation of the facts in the allegations of the complaint, rather than looking to what was actually pled in the complaint related to the issues in the case. Second of all, the second important fact in the present case is that in the present case, and doing as an agent for Caldwell Banker, was not just serving as the agent for the seller, but also the buyer of the dual agency capacity in the present case, which raises an important issue. Now, beginning with, first, the motion for summary judgment, which is the shorter of the two motions of the two portions of my argument, the motion for summary was granted based upon four basic issues, whether or not, A, the fact that Mr. Bullock, as admitted to in the pleadings and as admitted to in deposition, did not have a valid home inspection license at the time he conducted the inspection was relevant. Now, there have been several issues going back and forth as to whether or not that reason, whether it was inadvertent, whether it was actually a mistake, whether that has any bearing upon the present case whatsoever. However, it is important to note two things. Not only did he not have a home inspection license on the date the inspection was performed, the facts which apply in the present case was that not only that was wrong, his registration number was wrong, and the date of expiration was wrong on the present case. Those all give rise to the fact that many of the also of the complaints which were made in the complaint, not just those related to A, B, C, and D. B, C, and D reflect minor issues that were problems in the house after it was purchased due to the home inspection, such as problems with a sink, a shower, and some electrical fixtures, which were minor. Many of the other factors were made. However, when we get down to this issue of whether or not they should have entered motions for summary judgment on the fact that he did not have a license, it's really problematic. It's problematic in two ways. Number one, the question in the inference which can be raised and should be raised and should be raised in my favor is was this done as part of his failure to do his job adequately. All of the accounts against Mr. Bullock have not, at this point, been dismissed in the present case. They are still violent. They raised approximate cost issues with respect to that, with respect to his licensing. How can you connect the cost of the draft with, I guess there was a lapse, essentially, or he had decided to let it lapse. He had decided to let it lapse. But it was a month or so, and he could have reinstated it without any further training. How does it tie into whether or not he was negligent or incompetent? Well, I think when you look at the report in its totality, we have all these other problems, not just the ones which summary judgment granted on in favor of the present case. Also the fact that it's not just the fact that it lapsed. He had everything correct on his paperwork. He dismissed the expiration date. He did everything wrong when we came to this report. And he goes into the wrong number for his licensing, the wrong date. He tries to say that it is. It still has to have some relevancy with respect to his conduct in giving his opinion with respect to the report. Well, I think it does go to his conduct, Your Honor. And I think it goes to his conduct in this way. When you have someone who is obviously not a licensed home inspector when he does the inspection, who puts on his form the wrong number of registration numbers for that, all of those goes into a factor which a trigger of fact should be able to decide as to whether or not that is relevant as it relates to the totality of how he can perform the inspection of the present case. Basically, the judge said you can't even talk about that. You can't even address that. It's not relevant. In the motion for summary judgment, we can't even raise those issues at this point. And we can't even talk about those issues at this point. When, in fact, those do become germane to the case when you have to look at the entirety of what happened in the present case. It's kind of interesting that in the orders, and there are two subsequent orders, the court says, well, the fact that it is, he did that, and it doesn't matter, you know, this is not just a claim but a misdemeanor for him to do this. Yet, in his order on the motion for summary judgment, or the motion to dismiss, the court simply relies on the fact that, well, Mr. Meter told him that if he went back to the house, it was a crime or class B misdemeanor. You can't have it both ways when you look at that issue, and I think I've addressed that in the brief. You can't have the issue of, well, is it relevant for this purposes that it was, and it's not relevant in the present case that it is when it comes to Mr. Bullock's licensing and Mr. Bullock's having that as meter. It's also for the prior fact to decide, and in this case at some point, as to whether or not the fact that he wasn't licensed and he at least put the wrong registration number for his registration number on the front of the home inspection, which the deposition, at least in the case he had done several in the past years, all of this leads one to wonder or question and draws the inference, was this a pattern? And when you're looking at a home inspection where obviously certain of these complaints which were made and the complaint remained, those issues should at least be able to be addressed by the court and be able to be at least looked to by whoever is going to try the case, whether it be a judge or a jury, as to whether or not those issues are relevant to the present case and are relevant to the factor of not only did he not perform, as our complaint alleges, the inspection properly, but just to claim the fact that he couldn't get those other informations right. This is especially in light of – Well, that tends to prove that maybe he's sloppy, but I still have trouble connecting up how that actually relates to the proximate cause in this case. I understand, Your Honor. But if you look at the fact that there were so many things which we have alleged were wrong with the house and then you have the fact that his licensing in and of itself was incorrect and accurate when he performed the license and Mr. Meader held him out to be a licensed inspector in going through the process, I think that does become relevant at that point as it goes to causation. And whether it was a lapse or whatever else, that could have been explained, but it was, well, you know, he didn't have a home licensing inspection, which is actually a crime, when he performed the violation and he performed the inspection. That, to me, does show some causation, some proximate cause, that this was not done in a proper manner. If, in fact, he can't even get his name and his registration right on the front of the page, then what are we to believe from the rest of the entirety of the inspection, which he performed by Mr. Forth and Schmeichel in the present case on the request of Mr. Meader, who was the defendant in the second part of it? So that's how I say that that ties that issue up. As it relates to that issue, when we look at the other three issues in the present case, which are B, C, and E, they're rather minor issues, and I don't want to prolong the issues. They relate to some electrical sockets, a sink that was bogged, and a shower. Our position on that is, if you can read the brief and Mr. Lynch's brief on the issue, we thought an affidavit said these things were readily apparent, and they have the inspection of them. We feel that because the affidavit was filed saying these things were readily apparent and anybody could have seen them when they went in there and when they went right in after the house, that those issues really are also not to make for the motion for separate judgment. However, in moving to the second portion of it, which is also equally as important as the motion to dismiss, as it relates to the remaining of the defendants, C. Barr, Commonwealth Bankers, Thomas Cox, and Brad Meader, in that case, what we have is we have several causes of action against all three of those individuals, those being fraud, fraudulent misrepresentation, negligent misrepresentation, violations of the Consumer Fraud Act, and also breach of fiduciary duty. Now, the court in that case, this was, again, a 2-6-15 motion based upon the pleadings of the case. It was not a 2-6-19 motion based upon some thing which would obviously preclude them from taking action. The court in the present place said, well, you just can't state a claim and we're going to dismiss the present case in its entirety. When you look at the actual allegations contained in the complaint, though, against each of the defendants, because they're all interrelated, and many of these causes of actions, as stated in Neptuno, disc jockey referral, Connick v. Suzuki Motor, and all of these issues are very interrelated. It's not like there are several causes of actions which are unrelated or not of the same kind of character. But what it boils down to is when you look to the nature of the fraudulent misrepresentation and you look to the negligent misrepresentation of the Commonwealth fraud, what the court appeared to be saying from the order is that you must plead with some specificity as to what you feel the fraud allegations are. And those cases clearly say that, especially in fraud cases, that you have to plead with specificity. But when you get back to the case, we go back to the facts in common in our complaint, which are co-obtained in paragraph 26. We specifically allege when the conversations took place, what the conversations were said, and how they, what Mr. Meador told to the defendants or the plaintiffs in the present case as it related to these issues. This is not a situation where we just fled, such as in federal court, somehow the notice pleading, which said, well, he said something back. We were very specific in our accounts of our complaint as to what was actually said. But when it comes down to that, probably more important than that is the fact that it seemed to be completely overlooked in the lower court is the relationship between Conwell Banker, Thomas Hux, and Brad Meador in the present case. They were performing as dual agents. It wasn't like they were just representing the buyers. They were just representing the sellers. They were representing all the parties in this transaction. And as such, raises the level of the information which needs to be told to the parties based upon the statements which were made. If Mr. Meador had been or Mr. Cox had been just representing the sellers of the home, they would not be at any difference or any deference to provide information which is not outside what they provide a buyer. But they entered into the dual contract agreement or the dual agency agreement between the parties in order to help them to facilitate the buying of the house. As part of that as contained in my brief, there is a clause in the dual agency agreement as to what the duties of the dual agent are. And it's set forth in my brief very clearly as to what a dual agent is to do and it's to treat both parties fairly and to prize them in situations and to tell them about the transaction and to be there to lead them through the transaction. In paragraph 26, we set forth what we feel is the basis for the fraud and the allegations based upon the complaint. Not just, you know, cursory conclusive court. I can't say it. Conclusive court allegations about what we feel that Meador or Cox said. It's very specific as to what the allegations were said and the times and the places they were said and how this information was provided to answer this cause of action. But in looking at these, again, we go back to can you look at this in the light most favorable to the non-moving party? That being the schmackles of the present case. Is there a set of facts, which is set forth in the complaint, which provides them with a basis for proving their allegations of the complaint that can move forward? The judge in the present case seemed not to believe that. I said, well, there's no positive set of actions and you just can't seem to plead anymore. When in fact, you know, we did plead sufficient causes and sufficient nature in order to do that. If we look at the order which was entered, you know, he said, well, some of these things may be true. Some of them may not be true, but it doesn't really matter. You can't prove these allegations, so therefore we're going to dismiss this with prejudice. It's important to look not only to that, but to the case law in the present case, which are held forth in Howard v. Smith and St. Joseph and Kinsey v. Scott, which go through exactly what is said and what should be said and what kinds of basis is formed, allegations for a common law, a negligent misrepresentation or anything else. Opinions, as stated by many of these courts, can be the basis clearly of a cause of action if the opinion is not stated in the proper manner or is not stated in the way that it should be in the present case. And I specifically point to Kinsey and to St. Joseph v. Corbett, Kinsey being 124 Illinois Appellate 329 and also St. Joseph's 211 Illinois Appellate 2925. That's from 1974. The other one's from the 1st District from 1998. Oh, sorry. 2nd District, 1984. It is only under circumstances that the fact should be apparent to the plaintiff's knowledge and intelligence from a cursory glance or he has discovered something which serves as a warning that he is being deceived that he is required to make an investigation of his own. There is no basis in this record for the plaintiff to suspect she was being deceived to require any further investigation by her. One of the major issues that came up in the pre-release was they should have conducted their own investigation. They should have looked into this, hired their own counsel. No, that's fine. However, when you have an agent who is working for you, presumably, in order to do that, you get past that argument because they're in the business of supplying information to you. This especially falls through under the Negligent Misrepresentation Act where one of the parameters of that is specifically that someone must be in the business of providing information which someone is to rely upon. How can one say that an agent, whether it's a dual agent or an agent just for them, is not in the business of supplying information to one party or another? Again, it's St. Joseph's Hospital versus Corbett. A statement which is technically true as far as it may be may nevertheless be fraudulent or misleading because it does not state matters materially qualified the statement is made. In other words, a half-truth is sometimes more misleading than an outright lie. Again, Howard B. Smith. A mere expression of opinion will not support an action for fraud. Sometimes, however, the expression of opinion may carry with it an implied assertion the speaker knows facts that justify it. Such an assertion must be implied where the defendant holds himself out or is understood as having special knowledge of the matter that is not available to the plaintiff so his opinion, in effect, becomes an assertion of summarizing his knowledge. Thus, the order remains free to deal in reliance upon the opinion of an expert juror as to the value of the time. Now, in all those three cases are completely similar to what we have here. We have a party going into a transaction for the sale of the home with an agent who is providing them with information to lead them to the sale of the transaction of the sale. And at the end of the day, if the information which was relied upon was incorrect as alleged in the complaint, then we have a basis of the complaint. We're not even to the point in this case, and the lower court denial allows us to get to the point in this case, whereas the proof of whether or not the allegations, which of course we deem to be true, are even true on the basis as it relates to this. The trial court merely dismissed it and said, no, I don't believe that you can prove any cause of action which relates to this issue and I'm just going to dismiss it all with prejudice, even though all these facts were pled in accordance with the elements that set forth in the cases previously, such as Suzuki and Neptuno. Again, I'll show you my brief. We go through, you know, what does a dual, what a license can do for clients while acting as a dual agent. It sets forth what they must do for both clients. And it's pretty clear. Treat all clients honestly. Provide information. Explain real estate terms. These are all things which we have alleged were violated in the course of our complaint, not only in this specific account, but in the facts common to all accounts, being paragraphs 1 through 29, specifically paragraph 26, and the underlying facts in the present case. Now, one issue that I would like to skip over and go back to if we have time is the issue of the consumer fraud breach of fiduciary duty. My last one. You'll have the opportunity to do that on rebuttal. All right. Thank you. Mr. Hardy. And you represent CBAR and anyone else? That's correct, Your Honor. I represent Coldwell Banker. Coldwell Bank. Dependents, which would include Mr. Meter and Mr. Cox. And Mr. Lynch represents Mr. Boltz. Mr. Boltz. That's correct. Your Honors, I will be, of course, addressing the second portion of his argument relating to the 2615 motion to dismiss. The problem with this case, with respect to my clients, is the same problem that you, Justice Chapman, mentioned with respect to the license. Causation. The judge in this case, the trial judge, according to the plaintiff's counsel, looked to his own views of the allegations of the complaint and didn't view the evidence or the allegations liberally in favor of the plaintiff. That's not what happened at all. What the court did was the court looked at the exhibits, the contract, the renegotiation documents. And I don't think we have the report, though. I know that you don't represent Mr. Bullock. Sure. It's in the record. Right. That's correct. It is attached to the third amendment complaint, which is actually referred to as the second amendment complaint, mistakenly, but it is the third amendment complaint. And it is attached as an exhibit and relied upon in the third amendment complaint. That is what forms the basis for the claim, the contractual relationship between the parties. And as we pointed out in our brief in some great detail, the problem with the plaintiff's claim is, and we talked about paragraph 29, which I'll get to here in a moment, is that after he received the inspection report, after all of these alleged misrepresentations, which we acknowledge the allegations must be viewed in a light most favorable to the plaintiff, but nonetheless, you still have to get to the issue of proximate cause. And the plaintiff says, well, the judge said, okay, some of these things they may be able to prove, some of them they may not be able to prove. But then he went on in some detail and said, look, it doesn't matter. There's no causation here because, and let me go right to paragraph 29, the paragraph that he's talking about in his argument. Paragraph 29 deals with, or it's actually 26, I believe, after the home inspection is done, on December 26, the previous paragraph alleges it on December 29, 2006, the plaintiff met with their agent. Okay? Then paragraph 26 alleges what happened at that meeting. And we deny those things, but again, for purposes of the motion, we admit that if they're well-planned, they have to be taken as true. It's after that point that the trial judge focuses in on what happened. The documents attached to the complaint show exactly what happened. The plaintiff at that point had several different options. The plaintiff could have simply walked away. The plaintiff could have demanded that the seller correct the deficiencies. And let me tell you what he did to me. He demanded, this is after these allegations of statements allegedly made by Mr. Meader, he says, okay, I want a roofer to inspect the roof and make the corrections. I want all of these different things corrected, and there's a long list of them. He then says, well, he wants, let me just go through them, because I think it's important that you understand just what he knew as evidenced by the very documents signed by him. He says, I want treatment of the house for turbulence. I want inspection of the roof by a licensed roofer and repairs made as needed. I demand that you clean and repair the gutters, repair the windows, repair the garage, the windows, the garbage disposal. The hot water heater should be replaced. And inspection and correction of the electrical issues. And in Mr. Bullock's report, he notes that it should be, the electrical should be inspected by an electrician. All that's in the report. So he demands all of these things. And I'm not making this up. And if it's inconsistent with the allegations of the complaint, well, then you go with the exhibit. That's what the law is. In response, the seller comes back and says, no, I won't do any of those things, but I'll give you a $500 credit. Mr. DePlano then says, well, no, I won't agree with that, but let's negotiate a little bit more. Give me $1,000 plus the termite treatment. They agree on that. Now, the document also shows, and I admit it's not clear in the record. I don't think there are facts in depositions or anything that relates to this. But the document itself says that the purchase price on 1-8 of 2007 was reduced from $132,000 to $130,000. So you have this negotiation that took place. So are you saying it was $2,000 somehow? Well, I'm not sure. You just don't? Okay. I acknowledge to you that that's not entirely clear from the record, but it is clear from the record that on 1-8 of 2007, they crossed out the $132,000 and put $130,000 and then initialed it. But the judge didn't really rely upon that. The judge relied upon the renegotiation. And my point is, and I make this point in my brief, Plano does not address the causation issue anywhere in his brief. He didn't file a reply brief and address it, and I don't think he could have at that time, so I'm not criticizing him in any way. He didn't have to file a reply brief. It's certainly not something that's required under the rules. But the causation issue was the basis relied upon by the trial judge to dismiss the case. That issue has not been addressed on appeal by the plaintiff. And I submit to you, Your Honor, that the reason is the same reason that he struggled with your answer to the license question, and that is that he cannot show proximate cause under these circumstances. And each and every one of these causes is about to require a finding of proximate cause. Now, the remaining issues about the specificity of the allegations, whether he was entitled to rely on these alleged misrepresentations and so forth, I would simply defer to the trial court's order in our brief because I think the court is right about that. Given what happened with the later negotiation and so forth, it's certainly not reasonable to rely upon these alleged statements when you have an inspection report that says all of these things and you demand that all of these things be taken care of and then negotiate that all away. But I think that's adequately raised in our brief, and I would simply say that the proximate cause issue is a dead-bang winner, and the trial court was absolutely correct on that. And I fully understand that we're at the pleading stage, but we're talking about the contract that's attached, and I think when you look at the record, Your Honor, as I know you will, and you see the contract documents that are attached to the third amendment claim, you will see that they absolutely support exactly what the trial judge held in this case. So for those reasons, we would ask that the court affirm the dismissal, and we'll be on this case before dismissal of the case. Thank you. Thank you, Mr. Hardy. Thank you, Your Honor. May it please the court, my client, of course, is Roger Bullock, the home inspector, and I will point out that this comes before the court on a motion for summary determination of major issues, and so the criteria are a little different. We're not admitting well-pleaded facts and that sort of thing, but summary determination of major issues, and I think for the court's benefit, what I will say is that the only issue that remains pending as to Mr. Bullock in the circuit court relates to the garage floor. That's it. The other issues that were pending and pleaded were resolved by the summary determination of major issues. Looking at the pending complaint and the previous complaints, if you just looked at the pleading itself and describing the alleged deficiencies of the report that Mr. Bullock prepared, you would think that this was some sloppy little one-page report that my client prepared. In fact, that's not the case at all. I mean, this is a very lengthy, very detailed report that points out a long list of problems with this house. I did appreciate that section of Mr. Hardy's statement of fact where he sets these points out, page and a half in terms of what actually was in this report, and so this was not some sloppy effort on the part of Mr. Bullock. It went into a lot of detail. I think that one issue that's been mentioned again this morning has to do with the license number as it appeared on the report. I think that's a highly far-fetched issue. Basically, what happened was there was a juxtaposition of a couple of numbers on that report, and it was a typographical error. There's certainly no cause of action arising from that fact. But certainly I think the major issue, the most significant issue that's presented does relate to Mr. Bullock's license. This is not a situation where Mr. Bullock was some inexperienced person holding himself out as a home inspector when he had no license. The facts are that Mr. Bullock had long experience in home repairs and home construction and had been for several years a licensed home inspector. His deposition indicates that as we're coming to the end of 2006, he was intentionally not going to renew his license, simply that he felt he wasn't getting enough work as a home inspector, but did not plan to renew his license. But he mistakenly believed that the license was going to expire at the end of 2006. And inadvertently, this was not something within his actual knowledge, the license, in fact, expired at the end of November instead of at the end of the year. And he did not know that. So what occurred here was that this home inspection was performed and the report prepared four weeks after the license had expired. Now, a lot of, you know, certainly a lot of things can be said about that. One is simply that four weeks later, Mr. Bullock's credentials as a home inspector were obviously not any less than they had been four weeks earlier. His background, his expertise was not any less. This was clearly inadvertent. I mean, he testified to that in his deposition, and there certainly, I mean, not that there necessarily could be a counter affidavit, but there's no circumstantial evidence to suggest that it was anything other than inadvertent. Now, what we're also focusing on, I mean, there's not a lot of, you know, the cases that we point to under Illinois law have to do with motor vehicle licenses, and that's a pretty well-established point under Illinois law over many years, that the status of a motor vehicle license is not relevant to a civil claim for negligent operation of an automobile. And again, we're not talking about some, you know, some of the cases might involve an inexperienced driver, and then the issue is just you were driving negligently. Look to the driving, not to whether you have a license. But that isn't even the situation here. We have a licensed and qualified inspector whose license happened to be expired, you know, unknown to him, or at least unrecognized by him four weeks earlier. So yes, there's a very significant proximate cause issue here, and traditionally this is, you know, this is something that's been considered inadmissible in a civil claim under Illinois law. We cited one case from the Supreme Court of Alabama, not necessarily, you know, the preeminent authority, but it does really, I think, set out the issues in the correct analysis, that there has to be a showing of proximate cause and actual damage, that somehow the licensure had something to do with what allegedly went wrong in the situation. So plaintiff has a lot of, you know, there really isn't going to be any kind of showing of proximate cause, and the way I would put it, how can there be any suggestion that four weeks earlier anything different would have been done in this report? As far as the specifics, the alleged deficiencies of the report, you know, as pleaded, you know, as covered in our motion for summary determination, comes down essentially to three issues. I think I heard Mr. Bradley call these minor issues, and I certainly agree with that, they're minor issues. One had to do with electrical outlets in the kitchen, and we've gone into some detail both in the brief and in our motion as to what the report said about electrical. The language of the report itself says that the inspector tests a representative sample of outlets. It says there's a very specific recommendation for an electrical inspection. I mean, that's not even just boilerplate language. He mentions that there should be an inspection by an electrician. With the showerhead, that's kind of a very fact-specific issue, but, you know, set out in our motion. There's actually an affidavit from Mr. Bullock as to what he was able to see when he did the inspection. He actually went to the home after Mr. Bullock, Mr. Schmechel called him when the showerhead had come down, took pictures, and those pictures are in the record. So the court very appropriately granted our summary determination on the showerhead issue. And then we're talking about some clogged drains and a malfunctioning faucet outside, you know, in the backyard. Or at the back end of the house, I think it is. And, again, go into detail in the brief, but, you know, these are essentially, these are routine maintenance items. You know, get a plumbing snake, get some Drano, whatever it may be, but these qualify as routine maintenance rather than as some type of thing that the home inspector is required by the standards to identify. So, Your Honors, I think, you know, I think the record is clear that on all the issues that have been raised and that were before the court on summary judgment, the motion for summary determination, that the circuit court correctly decided those issues, granted summary judgment, and that that judgment should be affirmed by this court. Thank you. Thank you, Mr. Lynch. Mr. Bradley? Thank you, Your Honor. I have a question. With respect to Mr. Bullock, there seems to be a fairly lengthy recommendation in his report as to what needs to be corrected. Are you contending that because he had these conversations with the agent that maybe they reduced the necessity? It's kind of a little bit inconsistent for me to understand how you're saying that he relied on the report of the inspector and was damaged by that, but then you're saying he didn't rely on it when he essentially ignored some of these recommendations based on the agent's statements, who is not obviously a certified inspector. And that comes out to be one of the issues in the presentation, Your Honor, is that you have two different individuals, and if you look at the specific allegations that are alleged, Mr. Bullock provides a report, not the report that they requested from Mr. Meader, not actually even the inspector they requested, but has an old buddy of his that could get this thing done and do it. And then when you look at the allegations that set forth in the complaint in paragraph 26, you see that, you know, he basically said, well, those things aren't that bad. Don't worry about them. But many of these things in the inspection report that we talk about, I'm not talking about the electrical sockets, let's talk about the shower head that clogged the drain. These are two issues which are easily readily apparent, readily able to look at. Turn the water on, see if the drain clogs up. He obviously didn't do it. See if the shower head comes on, you turn the water on. He didn't do it. And those issues, you know, we really looked at that. I don't need to address that as much because these were fairly minor issues which should be taken care of since we're dealing with the Minister of Cemetery Judgment. You know, the issue on the electrical portion of it was just about five black sockets that didn't work in the present house. He says we'll get an electrical inspection of that, a complete electrical inspection. There wasn't really much time because you have this done on January and December 29th. Meader tells them, oh, it's fine, don't worry about it, we'll address that later. You know, it's kind of all put together where you have Bullock and Meader and everyone else telling all these people, oh, go ahead and go along and get the sale done and don't worry about this stuff until it's actually done. That seems to be the whole thing that's going on throughout the allegations of the complaint is that, oh, let's just get this thing done, we'll worry about all this stuff later. We even say in our Program 26 that Meader indicates that, you know, this wasn't that big of a deal, don't worry about it. Bullock's a good job, he does good guys, done inspection for years, he can do it, he's doing a good job, even though it's not one of their requests that are required. More importantly, they get back to the causation issue, which I would have to look to the order for judgment from the lower court. It doesn't mention a thing about causation. It doesn't mention a thing about any type of thing, well, if you can't prove those issues up, you can't see them. The order doesn't say anything about that. The order says you can't prove any facts, even though they're well played, they may or may not be true. Some of these things may have happened or may not have happened. That's the real issue to get down here, is whether or not we can prove a set of facts which gets us to the next level. And we did. And that's the causation in the present case is the fact that it was evidently lost upon the trial court was Meader and even Bullard are in the business of supplying information for the plaintiffs to rely upon in formulating their transaction. That's the real crux of this, and that's forgotten upon the trial court, it's forgotten upon everyone else, it's forgotten upon the defendants in the present case, is that these are not just two people that came in and said, yeah, it's a great house, go ahead and buy it. Bullard, hired to do an inspection, supposed to be the person that tells them if this is a good house or a bad house. Meader, agent, supposed to be the individual guiding through this transaction, helping through these things such as inspections and things of that nature. That's their jobs. It's not like these are two people off the street who just come in and say, well, yeah, that's a great house. It's not even like it's the actual sellers of the house are saying, we love this place, never had a problem with it, beautiful. These are the people hired who are receiving money for performing a service to the plaintiffs, and they're providing inaccurate or at least misleading information to the plaintiffs in this business transaction. And that seems to be lost upon the defendants. As they want to say, oh, you know, we just have a report. Well, it's clear that we got past a lot of the issues of the motion for summary judgment, just these three minor ones, but when you get down to it, that's what is lost. The causation is this. We listen. Can I finish? You can finish your thought. We listen to what you said and what you said was wrong or misleading. And that gets us to the rise of the class action. We ask that you affirm or remand this back, approve the proceedings of the circuit court. Thank you, Mr. Bradley. Mr. Lynch, Mr. Carter, thank you for your work. Our hearings and briefs will take the matter under its eyes.